(September 1, 2005)

■ CARMEN SANTONI et al., Respondents, v BERTELSMANN PROPERTY, INC., et al., Respondents-Appellants, and OTIS ELEVATOR COMPANY, Appellant-Respondent. [800 NYS2d 676]—

Order, Supreme Court, Bronx County (Kenneth L. Thompson, J.), entered July 12, 2004, denying the motion of defendant Otis Elevator Company and the cross motion of defendants Bertelsmann Property, Inc., Insignia/Edward S. Gordon Co., Inc., and Insignia Financial Group, Inc. for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion and cross motion granted, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff Carmen Santoni was employed as a legal assistant for a company located on the 38th floor of an office building owned by defendant Bertelsmann Property, Inc. Defendant Otis Elevator Company was responsible for maintaining the elevators in the building. The elevators were equipped with a motion detector/sensor called an Enhanced Lambda Door Protective Device. This system emits an interconnected series of infrared light beams across the elevator. There was expert testimony that if the light beam is interrupted, the protective device is triggered and the elevator doors immediately stop and retract.

On September 7, 1999, Carmen Santoni went out to buy lunch with a coworker. Upon returning to the building, the two went to take the elevator up to the 38th floor. According to Santoni, both elevator doors opened, and she stepped onto the elevator. Then, the right elevator door began to close, hitting her in the shoulder and knocking her into her coworker. The left elevator door never closed. Less than half a second later, both elevator doors closed on her right arm, elbow and wrist, and then opened immediately. Santoni did not remember how long the doors remained opened, but they both closed, and the elevator went up to the 38th floor. The elevator bounced a little, and stopped slightly off-level from the landing.

Plaintiffs commenced this action against the owner, the management company, and Otis Elevator for negligent inspection and maintenance of the elevator. After joinder of issue, Otis moved and the owner and management company cross-moved for summary judgment dismissing the complaint and any cross claims insofar as asserted again them. In addition, the cross motion sought, in the alternative, summary judgment as to the issues of common-law and contractual indemnification and breach of contract over and against Otis. In support of dismissing the complaint, defendants submitted evidence that they had no notice of any problem with the elevator Santoni used the day she was injured, and that the elevators were regularly inspected and maintained. The court denied the motions on the ground that "[a] review of the expert affirmations [*sic*] create [*sic*] issues of fact, including but not limited to whether Otis properly maintained the subject elevator." The court also denied that branch of the cross motion for indemnification and breach of contract as premature.

We reverse. For a moving party to obtain summary judgment, the cause of action or defense must be "established sufficiently to warrant the court as a matter of law in directing judgment" in the movant's favor (CPLR 3212 [b]). Here, defendants tendered "evidentiary proof in admissible form" (*Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]) that they had no notice of nor did they create any defective condition (*see Gordon v American Museum of Natural History*, 67 NY2d 836 [1986]; *Vaynshteyn v Cohen*, 266 AD2d 280 [1999]). Thus, defendants demonstrated their prima facie entitlement to summary judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

With respect to lack of notice, defendants demonstrated, through competent evidence, that no other complaints, calls, shutdowns or problems regarding the subject elevator occurred

the day before, the day of or the day after the incident. Other competent evidence established that each of the building's elevators is examined once a week. In particular, an Otis employee testified at his deposition that he inspected the elevators once a week, rode the cars, operated the doors and elevator buttons, checked for noises and smoothness of the ride and doors, cleaned and lubricated the elevators and checked the Enhanced Lambda system. Moreover, on August 26, 1999, 11 days prior to the incident, the Otis territory manager performed the mandatory New York City inspection on the elevator at issue, and an annual supervisor's survey was performed on the elevator 17 days prior to the incident.

Otis Elevator's expert examined the Enhanced Lambda fixtures after the accident. He opined that if the Lambda door units were disabled or if any infrared beam malfunctioned, the doors were wired to remain in a fully open position, making the accident described by the injured plaintiff "an impossibility." He further stated that it was mechanically impossible for one door to move without the other, or for one door to close faster than usual, as Santoni had asserted. We note that defendants' expert concluded that because the elevator operated normally after the injured plaintiff and her coworker entered it, there could not have been anything wrong with it.

In order to defeat defendants' motions, it was incumbent upon plaintiffs to show "the existence of a bona fide issue raised by evidentiary facts" (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). "Reliance upon mere conclusions, expressions of hope or unsubstantiated allegations is insufficient" (*Corcoran Group v Morris*, 107 AD2d 622, 624 [1985], *affd* 64 NY2d 1034 [1985], citing, inter alia, *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

In opposition, plaintiffs argued that Otis failed to reasonably inspect and maintain the elevator. Plaintiffs' expert, without indicating when he inspected the elevator, speculated that the most likely reason the doors failed to retract upon bumping into Santoni was from carbonized build-up on the relay contacts of the Enhanced Lambda Door Protective Device. Plaintiffs' expert averred that carbonization of contacts occurs over a period of time and is easy to detect upon a visual inspection. When there is excessive build-up, an elevator door can fail on an intermittent, as opposed to a regular, basis. Plaintiffs' expert concluded that had there been proper inspection and maintenance, the contacts would have been replaced before there was an excessive build-up of carbon affecting the doors' ability to retract.

It is axiomatic that "[o]pinion evidence must be based on

facts in the record or personally known to the witness" (*Samuel v Aroneau*, 270 AD2d 474, 475 [2000], *lv denied* 95 NY2d 761 [2000], citing *Cassano v Hagstrom*, 5 NY2d 643 [1959]). Indeed, "[i]f the expert's conclusions lack foundation in the record and are speculative, the affidavit will not raise questions of fact sufficient to preclude summary judgment" (*Id.; see also, accord Saborido-Calvo v New York City Tr. Auth.*, 11 AD3d 216 [2004]). Here, plaintiffs' expert's opinion failed to raise a triable issue of fact as there is no evidence in the record, beyond the expert's speculation, of any carbon build-up on the elevator sensors. Plaintiffs' other evidence in opposition to defendants' motions is similarly insufficient to defeat defendants' motions.

As plaintiffs failed to raise a triable issue of fact as to notice or negligent inspection and maintenance, the motion court should have granted defendants' respective motions for summary judgment dismissing the complaint. Concur—Buckley, P.J., Tom, Andrias, Marlow and Ellerin, JJ.